**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA** RECEIVED
**EASTERN DIVISION**

2019 SEP -3 P 2: 27

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

JOHN OIRYA,

        Plaintiff,

    v.

MANDO AMERICA CORPORATION,

        Defendant.

Case No. 3:19-CV-635

**DEMAND FOR JURY TRIAL**

## COMPLAINT

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), seeks redress for unlawful employment practices on the basis of disability against Plaintiff John Oirya ("Oirya" or "Plaintiff"). As alleged below, Oirya had a record of a disability, having shift work sleep disorder that was a symptom of clinical major depression and PTSD, and bouts of severe food poisoning and allergies. These disabilities occurred either independently, or triggered each other. Oirya participated in medically supervised rehabilitation programs for his health conditions.

Defendant violated the ADA by terminating Oirya employment while deliberately failing to provide him with an identified and requested reasonable accommodation. Also, Defendant violated the ADA by retaliating against Oirya because he requested reasonable accommodations for his disability, and he complained or raised concerns to Defendant regarding its failure to grant Oirya reasonable accommodations.

Oirya was qualified for the Training Coordinator position that he held at Mando, and was competently meeting the job performance goals, requirements, and evaluations for this position.

Thus, Oirya was a qualified individual with a disability.

1

## I. JURISDICTION AND VENUE

1.  Plaintiff Oirya is an individual over the age of 19, and is a resident citizen of Salt Lake County, in the State of Utah. But at all times relevant to this complaint he was a resident citizen of Lee County, Alabama, located in the Middle District of Alabama, where he was employed by Defendant Mando.

2.  Defendant Mando America Corporation ("Mando"), is a multinational Corporation engaged in the business of manufacturing and supplying auto parts and components, mostly to car manufacturers.

3.  At all times relevant to this Complaint, Mando was doing business in Lee County, Alabama, and continuously had at least 15 employees. Therefore, Defendant is an employer within the meaning of Title I of the Americans with Disabilities Act of 1990, and 42 U.S.C. § 2000e(b).

4.  Mando is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees, and for any injury occasioned thereby.

5.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, and in that the employment practices alleged to be unlawful were committed within Lee County, Alabama, Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

6.  Within 180 days of learning of the acts of discrimination of which he complains, Oirya filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*See* **Exhibit 1** – 2019-05-28-Charge of Discrimination).

7.  Oirya received his Notice of Rights from the Department of Justice, dated June 3, 2019, and he brings action within ninety (90) days of the receipt of his Notice of Rights. Therefore, all administrative prerequisites for filing suit have been satisfied and Oirya is entitled to bring this action before this Court.

## II. BACKGROUND

8.  Oirya brings this action for unlawful employment practices and acts of intentional discrimination and retaliation that occurred during his employment with Mando.

9.  Oirya asserts that despite meeting all performance goals and other work requirements at Mando, this Defendant initiated disciplinary action against him that resulted in the termination Oirya's employment: (1) because of his disability, because Oirya had an actual impairment, a record of actual impairment, or Mando regarded him as having an impairment; (2) because he has an impairment that actually and substantially limits him in one or more major life activities for which he requested a reasonable accommodation, and Mando denied him the requested accommodation in violation of the ADA; and (3) because Mando retaliated against him for engaging in protected conduct, that included requesting an accommodation for his disability, and complaining or raising a concern regarding Mando's policies and practices that denied him a reasonable accommodation.

## III. FACTUAL ALLEGATIONS

10. On or about November 4, 2015, Oirya began working for Mando by way of a placement by A-1 Employment Inc., a recruitment agency contracted by Mando to recruit its employees.

11. On or about March 28, 2016, Mando hired Oirya as Operator (Level II), where he became an official Mando employee.

12. On or about September 19, 2016, Mando promoted Oirya to an advanced-level Training Coordinator position, where he reported to Ms. April Regier, Corporate Training Supervisor. Oirya was well qualified for this position in that, among other qualifications, he held a Master of Business Administration degree with an emphasis in Human Resources Management and Employee Training and Development, and other employment related certifications related to his job.

3

13.   During his employment, Oirya participated in professional development trainings that were offered through Mando. Through these trainings, Oirya earned his Six Sigma (Green Belt and Black Belt) Certifications and OSHA 10 Certification, thereby enhancing his job performance skills and abilities.

14.   As part of his job functions and responsibilities, Oirya initiated and implemented a variety of training programs for Mando and performed his job by satisfactorily meeting or exceeding annual performance goals and requirements.

15.   Mando conducted its business operations on three 8-hour shifts that included 7:00 am to 3:00 pm, 3:00 pm to 11:00 pm, and 11:00 pm to 7:00 am. Oirya's job as Training Coordinator covered employees on all Mando's three shifts.

16.   In the course of his employment at Mando, Oirya suffered from an episodic shift-work sleep disorder that was a symptom of clinical major depression and PTSD, for which he was treated by Columbus Psychological Associates. Also, he suffered from episodic bouts of severe food poisoning and allergies, for which he was treated by Auburn Urgent Care. These health disorders caused him to be substantially limited in performing major life activities, including but not limited to sleeping, caring for himself, walking, standing, lifting, bending, concentrating, working, and eating at regularly designated times that included lunch periods.

17.   Mando, through its employees and agents, was aware of Oirya's disabilities and history and record of disability.

18.   For example, during his employment at Mando, Darlene Schumacher, Human Resources Manager for Mando, regularly took Mando's human resources staff to lunch meal. These staff members mostly included Oirya, Brandon Yoon (Human Resources Generalist), Felix Owen (Health and Safety Engineer), Kayte Dulaney (Human Resources Generalist), and Cody Waller (Human Resources Administrator). At those lunches, Oirya always complained

4

to these staff members of his bouts of severe food poisoning and allergies, and always ordered special meals to accommodate his disability.

19. Also, on April 2 and April 9 of 2018, Oirya notified Ms. Regier verbally and in writing that he suffered from a sleep disorder that was a symptom of clinical major depression and PTSD, and bouts of severe food poisoning and allergies.

20. Thus, Oirya was a qualified individual with a disability within the meaning of Title I of the Americans with Disabilities Act of 1990, and as defined by 42 U.S.C. § 12102(1). He can perform the essential functions of his job with an accommodation.

21. During his employment, Mando denied Oirya reasonable accommodations in the form of modifying its employment disciplinary or termination policies, practices and procedures, to permit Oirya to confront Mando's disability-related allegations that Mando alleged against him; denied him the opportunity to confront these allegations and present his side of the story; and denied him the opportunity to present supporting medical evidence of his disability, and present accompanying recommendations of accommodation from his healthcare providers, so he could get from Mando all the appropriate reasonable accommodations that he was entitled to, all in violation of ADA.

22. Mando took adverse action against Oirya without obtaining any medical information from Oirya's healthcare providers and considering these health care providers' recommendations for reasonable accommodations that were appropriate for Oirya's disabilities.

23. Upon information and belief, possible reasonable accommodations that Oirya could have received from Mando, if it had considered his medical diagnosis, treatment and prognosis information, would have included reassignment to a vacant position, temporary modified work schedule, modified job duties, use of assistive devices for ambulation, and performance of essential job functions, among others.

24. At all times relevant to this action, Mando's termination policies and practices were wholly devoid of any opportunities for Oirya to confront alleged violations of Mando's policies that formed the basis of termination of his employment, including allegations that were protected within the meaning of ADA.

25. Mando deliberately denied these provisions to Oirya, in the course of discipling him and terminating him on the basis of his disability.

**Mando Initiates Disciplinary Actions Against Oirya on the basis of His Disability**

26. On February 1, 2018, Ms. Regier sent an email to Oirya, through which she scheduled a meeting with Oirya, that was to occur on the following date of February 2, 2018. In that email, she notified Oirya that she had "some things that [she] need[ed] to speak with [Oirya] about."

27. Upon Oirya's arrival at that meeting, Ms. Regier immediately handed Oirya a pre-drafted "memo" which "serve[d] as documentation of the Last Chance Agreement for John Oirya." This disciplinary memo accused Oirya of violating Mando's Conduct Policy "by sleeping on the job and abusing [his] designation lunch period."

28. Also, the disciplinary memo notified Oirya that "[i]n lieu of termination, [he was] being placed under [the terms and conditions of the drafted] last chance agreement [memo, which he was] required to review/sign" and be bound by the disciplinary terms and conditions of that memo "for a period of two (2) years from the date [that he] signed" the memo.

29. Ms. Regier's disciplinary actions came as a surprise to Oirya, since at no time had Mando ever granted Oirya any prior notices and opportunities to confront the disability-related allegations for which Mando was disciplining him.

6

30.   Oirya became deeply concerned that Mando was taking arbitrary and capricious disciplinary
      actions against him by denying him an opportunity to respond to allegations of misconduct,
      and present evidence, which would have absolved him of any wrongdoing.

31.   Accordingly, Oirya was hesitant to sign Ms. Regier's disciplinary memo and protested that
      the disciplinary action she was subjecting him to was fundamentally unfair.

32.   Oirya further explained to Ms. Regier that the allegations of "sleeping on the job and abusing
      [his] designation lunch period" as presented in her disciplinary memo, constituted his
      disability condition that was protected by ADA.

33.   Oirya explained to Ms. Regier that he suffered from bouts of severe food poisoning and
      allergies which prohibited him from having his lunch meals at Mando's designated lunch
      periods, and therefore he was forced to vary his lunch periods, to accommodate his disability.

34.   With this explanation to Ms. Regier, Oirya asked Ms. Regier whether it was "compulsory"
      for him to sign the disciplinary memo. Ms. Regier responded to Oirya that he did not have
      to sign the memo. However, she added that she will sign her part of that memo, and still
      place that disciplinary memo in Oirya's disciplinary file at Mando, and have the disciplinary
      actions, terms and conditions contained in that memo still apply to Oirya.

35.   Ms. Regier signed the disciplinary memo, and placed her hand-written annotation on the
      memo, stating that "Employee Refused to Sign." Oirya added an additional annotation to that
      memo, by stating that "Explanation [will be] Provided by [Oirya]."

36.   On or about February 9, 2018, Oirya submitted to Ms. Regier his signed and detailed
      "Explanation for Last Chance Agreement" in accordance with his promise to provide an
      explanation for failing to sign the unfairly issued disciplinary memo against him.

37.   In his written explanation, Oirya raised concerns that Mando had denied him meaningful investigations of its disability-related allegations against him, so he could receive all possible appropriate reasonable accommodations that he was entitled to.

38.   Also, in his written "Explanation," Oirya complained to Mando that the allegations of "sleeping on the job and abusing [his] designation lunch period" for which Mando had unfairly initiated disciplinary actions against him, were protected by both Mando's own Policy "3.12 Americans with Disabilities Act" policy, and federal law (ADA).

39.   Oirya identified to Mando the specific reasonable accommodations that he was entitled to, in the form of Mando modifying its employment disciplinary or termination policies, practices and procedures, to provide him with "sufficient and meaningful Due Process" that would permit Oirya to confront Mando's disability-related allegations against him, and request and receive all further appropriate reasonable accommodations that he was entitled to.

40.   Also, in that written "Explanation," Oirya asserted that multiple witnesses and credible avenues that would have verified and corroborated his disabilities, were never consulted by Mando. These witnesses, which Mando could have consulted regarding Oiryas' disability included his treating healthcare providers for his disability conditions.

41.   However, Mando never bothered to provide Oirya with his identified reasonable accommodations, despite Mando's policy expressly stating that Mando "reserves the right to request medical documentation [of an employee's disability] if necessary."

42.   Despite receiving Oirya's verbal and written protests, concerns and complaints regarding his disability, Ms. Regier proceeded to place the unlawfully issued disciplinary "Last Chance Agreement" memo into Oirya's disciplinary file, with the malicious and unlawful intent of later relying upon that memo to further discipline him on the basis of his disability, and

thereby retaliating against him for complaining or raising concerns to Mando regarding his disability.

43. Mando took no corrective actions whatsoever, to address Oirya's disability-related protests, concerns and complaints, raised in his February 9, 2018 written "Explanation for Last Chance Agreement."

## Oirya Suffers from Severe Food Poisoning at Work and Receives Medical Treatment

44. At or about April 18, 2018, Oirya suffered from severe food poisoning conditions while at work. Ms. Schumacher, Human Resources Manager for Mando, and Ms. Regier sent him to his doctor, and requested a clearance note from his doctor stating he was able to resume his work.

45. Oirya immediately went to his doctor on that day at Auburn Urgent Care, was evaluated, treated by his doctor, and given prescription medication to continuously take for his severe food poisoning and allergy conditions.

46. Also, Oirya obtained a doctor's note as requested and brought it to Ms. Schumacher, thereby, putting Mando on notice regarding his ongoing treatment for his bouts of food poisoning and allergies.

47. However, Mando's handling of Oirya's disability was wholly deficient and inadequate.

48. Besides obtaining a very brief clearance note from Oirya's doctor, Mando never bothered to obtain and evaluate the remainder of Oirya's detailed medical records that showed his diagnosis, treatment and prognosis for his disability. Also, Mando never requested from Oirya's health care providers any possible recommendations for appropriate long-term or permanent reasonable accommodation to offer Oirya.

49.  Without these medical records and recommendations, Mando lacked sufficient information to make a reasonably informed and considered decision to appropriately accommodate Oirya's disability, as mandated by ADA.

**Mando Terminates Oirya Based on Disability and Denies him Reasonable Accommodation**

50.  At some point prior to August 2018, Ms. Schumacher resigned as Human Resources Manager for Mando.

51.  In or about August 2018, Mando hired Audie Swegman (Mr. Swegman), as its new Human Resources Manager. Mr. Swegman was an external hire from outside Mando.

52.  During the morning hours of at or about December 3, 2018, Mando hurriedly convened a termination meeting against Oirya.

53.  Ms. Regier hurriedly invited Oirya to attend that meeting, without Mando having given Oirya any prior notices of the purpose of that meeting, or opportunities to confront any of the allegations that formed the basis for the intended termination of his employment.

54.  That termination meeting was attended by Oirya, Mr. Swegman, Ms. Regier, and Jermaine Vickers (Human Resource Generalist at Mando).

55.  Upon entering the conference room for the meeting, Mr. Swegman immediately notified Oirya that he was going to read to Oirya a termination letter, and asked Oirya not to interrupt Mr. Swegman until he finished reading the letter.

56.  Immediately after finishing reading the letter, Mr. Swegman handed the termination letter to Oirya, asked Oirya to hand to him any keys and electronic access cards in his possession that belonged to Mando, and immediately leave Mando's premises.

57.  Mr. Swegman never allowed Oirya to confront the disability-related allegations and other contents of that termination letter.

58. Also, Ms. Swegman and Mando deliberately ignored and disregarded Oirya's prior identified and requested reasonable accommodation to Mando, as outlined in his February 9, 2018 "Explanation for Last Chance Agreement".

59. The termination letter accused Oirya of "sleeping" on the job – a disability-related condition protected by ADA, that Mando was aware of. Additionally, the letter alleged that "[a]fter investigating [the allegation of sleeping on the job] further, it was confirmed by two Salaried Team Members that at approximately 2:30 PM on Friday, November 16, 2018 you were observed sleeping at your desk."

60. Thus, through that letter, Oirya was learning, for the first time, that Mando had conducted "investigations" into the disability-related allegations against him, for which Mando was terminating him. However, Mando had not involved Oirya in any of these alleged investigations.

61. Proper and meaningful "investigations" would have included Mando providing Oirya with opportunities to assert his side of the story, confront the disability-related allegations in that termination letter, confront his alleged accusers and their witnesses, and confront any material facts and evidence that Mando might have relied upon to terminate his employment.

62. Also, the termination letter stated that Mando was terminating Oirya based on the "February 2, 2018" meeting that Oirya had with Ms. Regier, at which Ms. Regier accused Oirya of "sleeping on the job and abusing [his] designated lunch period".

63. Thus, in terminating Oirya on December 3, 2018, Mando was retaliating against Oirya for Oirya complaining to Mando or raising concerns to Mando regarding denying him reasonable accommodation.

64. Oirya requested Mr. Swegman to grant him detailed notices of the allegations for which he was terminating Oirya, and an opportunity for Oirya to confront these allegations.

11

65.   However, Mr. Swegman denied Oirya's request for this reasonable accommodation, by claiming that all Mando's records and details of those allegations and "investigations" for which Oirya was being terminated, were "proprietary" property of Mando, for which Oirya was not entitled to.

66.   Mr. Swegman's acts, omissions and assertions in terminating Oirya were in violation of ADA, because Oirya was entitled to this requested reasonable accommodation to Mando, in the form of grievance procedures and procedural protections through which Oirya would have made a compelling case for his disability to Mando, confronted the disability-related allegations for which Mando was terminating him, and requested and received appropriate reasonable accommodation that he was entitled to.

67.   However, Mando deliberately denied Oirya this requested reasonable accommodation.

68.   Mando cannot demonstrate that Oirya's request for the aforementioned reasonable accommodation to Mando would have fundamentally altered the nature of the service, program, or activity that Mando provided in the course of conducting its business.

**Aftermath**

69.   Within 180 days of learning of the acts of discrimination of which he complains, Oirya filed charges of discrimination with the EEOC, alleging inter alia, denial of reasonable accommodation under ADA, retaliation under ADA, and violations of his other rights under other statutes, as will be revealed through discovery and presented at trial.

70.   There is nothing in Mando's records to show that it engaged in any good faith efforts to accommodate Oirya's disability that Mando was aware of, prior to initiating disciplinary actiosn against him, and ultimately terminating him.

71.   Under information and belief, Mando granted Oirya's similarly situated employees reasonable accommodations for their disabilities whenever they made requests of reasonable

accommodation, but denied the same to Oirya. These employees include, but are not limited to, Ms. Schumacher, Ms. Regier, Mr. Swegman, Brandon Yoon, Felix Owen, Kayte Dulaney, Cody Waller, and Jermaine Vickers.

72.   Mando's discriminatory and retaliatory conduct described herein was accomplished pursuant to official or unofficial policy, custom and practices of Mando or was committed or authorized by officials whose acts can be fairly deemed to be the actions and official policy and customs of Mando.

73.   The unlawful employment practices complained of above were done intentionally with malice or with reckless indifference to the federally protected rights of Oirya, a qualified individual with a disability.

74.   The effect of Mando's above-stated actions has been to deprive Oirya of employment opportunities, career advancement, income in the form of salary, overtime pay, prospective employment benefits, and other benefits to which he would have been entitled, but for Mando's illegal actions.

75.   The effect of Mando's above-stated actions has also caused Oirya to suffer out-of-pocket losses and mental and emotional distress for which he seeks redress.

### COUNT I
### Violation of ADA – Denial of Reasonable Accommodation in the Form of Modifying Employment Disciplinary or Termination Policies, Practices and Procedures

76.   Oirya incorporates the allegations of the preceding paragraphs as if fully stated herein.

77.   At all times relevant hereto, Mando was been subject to the requirements of Title I of the Americans with Disabilities Act as amended, which prohibits discrimination on the basis of disability and requires reasonable accommodation for disabilities.

78.   ADA requires covered employers to provide reasonable accommodations to employees in the form of modifying their employment disciplinary or termination policies, practices and

13

procedures, to accommodate qualified individuals with disability, within the meaning of Title I of the Americans with Disabilities Act of 1990, and as defined by 42 U.S.C. § 12102(1).

79. At all times relevant to this action, Mando's termination policy and practices were wholly devoid or deficient of elaborate grievance procedures and procedural protections through which employees accused of disability-related allegations would confront these allegations, make a compelling case for their disabilities to Mando, and identify, request and receive the appropriate reasonable accommodations that they were entitled to.

80. Mando charged Oirya with "sleeping on the job and abusing [his] designated lunch period," both of which were disability-related allegations. Mando subsequently terminated Oirya over these allegations. These allegations constituted Oirya's sleep disorder that was a symptom of clinical major depression and PTSD, and bouts of severe food poisoning and allergies that prevented Oirya from eating at regularly designated times that included lunch periods.

81. Oirya requested Mando to grant him reasonable accommodation in the form of Mando modifying its employment disciplinary or termination policies, practices and procedures, to permit Oirya to confront Mando's disability-related allegations that Mando alleged against him, and present his material evidence and facts to support of his disability case and request appropriate reasonable accommodation on the basis of his material evidence that was unique to his disability.

82. However, Mando deliberately denied Oirya his requested reasonable accommodation in the form of grievance procedures and procedural protections through which Oirya would have received all the additional appropriate reasonable accommodations that he was entitled to, pursuant to his rights under ADA.

83. Mando denied Oirya the opportunity to confront the disability-related allegations for which it terminated him, and denied him the opportunity to present supporting medical evidence of

his disability, and present accompanying recommendations from his health care providers regarding how his disability could be appropriately, uniquely and reasonably accommodated by Mando.

84.  Rather, Mando proceeded to terminate Oirya from his employment on the basis of his disability.

85.  As a direct and proximate result of Mando's intentional discrimination, Oirya has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of salary and other job-related benefits, including social security, all in an amount to be established at trial.

86.  Mando's actions have caused, and continue to cause Oirya, to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

## COUNT II
## Violation of ADA – Retaliation for Complaining Against ADA Violations and Requesting Reasonable Accommodations

87.  Oirya incorporates the allegations of the preceding paragraphs as if fully stated herein.

88.  In violation of ADA, Mando retaliated against Oirya because he made a complaint and raised a concern of employment discrimination.

89.  Oirya complained to Mando that he was denied any opportunities to confront the disability-related allegations for which Mando was initiating disciplinary actions against him.

90.  On December 3, 2018, Oirya requested access to the grievance procedure to address the allegations for which Mando was terminating his employment. His request was denied.

91.  As a result of Oirya's protected activities, that included making verbal and written protests, raising concerns and making complaints, Mando took adverse employment actions against Oirya, including, but not limited to:

(a). filing the "Last Chance Agreement" disciplinary memo in his employee file with the malicious intent of basing further adverse action upon the memo;

(b). Actually terminating Oirya's employment on December 3, 2018, using the Last Chance disciplinary memo as support for that adverse action;

(c). terminating Oirya's employment due his February 2, 2018 meeting with Ms. Regier, during which Oirya verbally protested and complained that Mando had denied him a reasonable accommodation prior to initiating disciplinary action; and, (d). denying Oirya the grievance procedural protections that he requested through his February 9, 2018 response to the Last Chance Agreement, and Oirya' further protestations to Human Resources on December 3, 2018.

92. If he had been granted the opportunity, Oirya would have been able to submit to Mando evidence of his disability, recommendations from his healthcare providers regarding appropriate reasonable accommodations applicable to his disability; and attempt to arrive at an appropriate accommodation for his disability.

93. The actions and omissions of Mando, through its agents, servants and employees, in retaliating against Oirya for requesting a reasonable accommodation, and for opposing or protesting against unlawful disability discrimination in Mando's workplace, constituted a violation of the ADA.

94. Mando's retaliatory actions would likely dissuade any employee from requesting reasonable accommodation for a disability, or even complaining or opposing Mando's discriminatory practices regarding providing a reasonable accommodation for a disability.

95. As a direct result of the unlawful retaliatory employment practices engaged in by Mando in violation of the ADA, Plaintiff Oirya sustained harm resulting from the termination of his employment, resulting in the loss of earnings, fringe benefits, and future earning power.

96.   As a further direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff Oirya suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

### PRAYER FOR RELIEF:

WHEREFORE, Oirya prays for relief on each cause of action, as follows:

A.   On all causes of action, damages in an amount not less than Five (5) Million Dollars, including compensatory, punitive and consequential damages where appropriate against Mando for his lost wages, mental anguish, humiliation and embarrassment relating to the defendant's unlawful actions, and punitive damages against Mando for its intentional discriminatory and retaliatory actions taken against Oirya, on the basis of his disability and for engaging in protected activity.

B.   Oirya seeks back pay, front pay, compensatory, and punitive damages, and all associated interests where applicable, for all income lost due to the termination of his employment.

C.    All costs and attorney fees, and for such other and further relief to which he is entitled and that the Court may find appropriate under the circumstances.

**PLAINTIFF REQUESTS TRIAL BY JURY**

Respectfully submitted,

/s/Ronnie L. Williams (ASB-6024-I68R)
Attorney for John Oirya
814 St. Francis Street
Mobile, AL 36602
(251) 432-6985
(251) 432-6987 (facsimile)

17